

**FILED & ENTERED**

**FEB 07 2017**

**CLERK U.S. BANKRUPTCY COURT**
**Central District of California**
**BY** cargill    **DEPUTY CLERK**

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA, RIVERSIDE DIVISION

| | |
|---|---|
| In re<br><br>Matthew Graham Mighell,<br>Diana Marie Mighell<br><br>                              Debtor(s). | Case No.: 6:09-14033 MH<br><br>Chapter 7<br><br>**MEMORANDUM DECISION AND ORDER: (1) HOLDING DANIEL G. BROWN IN CONTEMPT; (2) ESTABLISHING BRIEFING SCHEDULE; AND (3) SETTING HEARING**<br><br>**New Hearing:**<br>Date:         March 22, 2017<br>Time:        11:00 a.m.<br>Ctrm:         303 |

**I.    PROCEDURAL BACKGROUND**

- 1

On March 4, 2009, Matthew and Diana Mighell ("Debtors") filed a Chapter 11 voluntary petition. On September 18, 2009, the case was converted to Chapter 7. On August 26, 2010, Debtors received a standard discharge.

On January 19, 2016, Debtors filed a Motion for Contempt against Daniel Brown ("Brown"). On January 27, 2016, Brown filed his opposition. Debtors filed their reply on March 14, 2016. On April 4, 2016, an order to show cause why Brown should not be held in civil contempt was entered by the Court.

On May 20, 2016, Debtors filed a brief in support of their motion. On June 21, 2016, Brown filed his opposition brief. After a continuance on July 20, 2016, Debtors filed their reply brief on August 10, 2016. On September 14, 2016, Brown filed a motion to continue hearings, which was opposed by Debtors on September 21, 2016. On October 4, 2016, an amended order was entered continuing the hearing until December 7, 2016.

On November 13, 2016, Brown filed another opposition. On November 17, 2016, Debtors filed another reply. By document filed on November 29, 2016, Brown corrected certain technical flaws in his opposition. On November 30, an order was entered continuing the hearing until December 20. At the hearing on December 20, 2016, the Court took the matter under submission.

## II.     FACTUAL BACKGROUND

In December 2008, Debtors and Brown began discussions regarding representation of Debtors in a state court proceeding,[1] in addition to a bankruptcy proceeding. The representation was discussed over the ensuing weeks, resulting in two agreements: (1) a contingency fee arrangement[2]; and (2) a bankruptcy fee arrangement. The former governed representation in the state court proceeding and provided for a forty percent contingency fee. The latter governed representation in the bankruptcy proceeding, and provided for a flat fee of $5,000 for limited scope representation. The contingency fee arrangement was disclosed to the Court.

On September 9, 2010, Brown filed a fee application requesting $25,420 for services provided outside the scope outlined in the bankruptcy retainer. Brown's application made clear that these fees were accrued while Debtors were in a Chapter 11, prior to the conversion date. On September 15, 2010, Trustee objected on the basis that Brown failed to seek employment authorization from the court and failed to disclose any subsequent fee arrangement. On January 5, 2011, an order was entered denying the fee application.

On March 30, 2010, the underlying state court proceeding resulted in a jury verdict in favor of two of Debtors' companies in the amount of $1,066,000. Debtors appear to have then fired Brown immediately after the issuance of the state court verdict. The verdict was subsequently overturned on appeal.

On March 21, 2012, Brown filed a complaint against the Debtors in state court for breach of contract, breach of implied covenants, quantum meruit, unfair business practices, and fraud. The complaint requested damages in relation to both representation in the state court proceeding and in the bankruptcy proceeding. The complaint was amended on July 1, 2013, to drop all causes of action except quantum

---

[1] In ¶ 1 of their motion, Debtor states Brown was to represent Debtors, JSA Depot, Inc., and Foreverlawn of Southern California, Inc., in the state court proceeding. It does not appear, however, that Debtors were plaintiffs in the state court proceeding in their individual capacity.

[2] There is a dispute regarding whether the contingency fee agreement was ever formally executed. As explained more fully in the beginning of the discussion section, that dispute is irrelevant.

meruit. On October 21, 2013, Debtors filed a cross-complaint against Brown for negligence. On February 2, 2014, Debtors amended their cross-complaint to add causes of action for breach of fiduciary duty and deceit.

### III. DISCUSSION

Debtors make the following arguments in support of their contention that Brown has violated the discharge injunction: (1) Brown's filing of the state court complaint violated the discharge injunction because the underlying services were provided pre-petition; (2) to the extent Brown is seeking repayment of fees associated with bankruptcy, those fees can only be paid pursuant to Bankruptcy Court order, but Brown's application has already been denied by the Court; (3) Brown has engaged in various dishonest billing practices; (4) Brown has harassed debtor-wife's mother and committed other unprofessional acts; and (5) Brown has violated attorney-client privilege. Only the first argument has merit. It is not clear how (2) through (5) are related to the discharge injunction.

Brown argues in response that all fees arose post-petition and are therefore not subject to the discharge injunction. Brown additionally contends that if the claims were discharged, he did not "willfully" violate the discharge injunction, because he subjectively believed the claims were not discharged at the time he filed the state court complaint.

There are two preliminary matters which allow quick disposition. First, to the extent that Brown is attempting to collect on a disputed claim for fees for bankruptcy services rendered post-petition and pre-conversion, that action is a violation of the discharge injunction. 11 U.S.C. § 348(b) (2010) provides:

> (b) Unless the court for cause orders otherwise, in sections 701(a), 727(a)(10), 727(b), 1102(a), 1110(a)(1), 1121(b), 1121(c), 1141(d)(4), 1201(a), 1221, 1228(a), 1301(a), and 1305(a) of this title, "the order for relief under this chapter" in a chapter to which a case has been converted under section 706, 1112, 1208, or 1307 of this title means the conversion of such case to such chapter.

Furthermore, the second page of the discharge issued by this court states: "If this case was begun under a different chapter of the Bankruptcy Code and converted to chapter 7, the discharge applies to debts owed when the bankruptcy case was converted." Therefore, while the bankruptcy services provided by Brown were provided post-petition, they were provided pre-conversion, and, therefore, were discharged. Second, there is extensive discussion and confusion regarding the actual merits and details of any claim Brown does or does not possess.[3] In order to determine whether the discharge injunction was violated, this Court need not analyze the merits of Brown's claim; it is not this Court's duty to determine whether Brown has a valid claim, or the form of that claim. As further explained below, the discharge injunction prevents attempts to collect on discharged debt. The state court complaint initiated by Brown represents the action Debtors contend violated the discharge injunction. Therefore, the debt that Brown is attempting to collect on is the debt that is outlined in his state court action. It is not appropriate for this Court or Debtors or any other entity to redefine the claim upon which Brown is attempting to collect. To

---

[3] Including whether the contingency fee agreement was signed, who Brown was technically representing, whether the contingency actually matured, what rights Brown had upon termination of the contingency agreement, whether an oral contract existed, whether Brown's services were inadequate, etc.

the extent the debt described by Brown is different from what this Court might have determined should be the claim asserted by Brown, it is the claim asserted in the state court complaint that controls.

  I.   *Standard for Contempt-Violation of Discharge*

11 U.S.C. § 524(a)(2)(2010) states:

> (a) A discharge in a case under this title-
>     (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived;

Section 524(a) can be enforced through the court's contempt power under 11 U.S.C. § 105(a). *In re Bennett*, 298 F.3d 1059, 1069 (9th Cir. 2002); *see also In re Nash*, 464 B.R. 874, 880 (B.A.P. 9th Cir. 2012) ("A party that knowingly violates the discharge injunction can be held in contempt under § 105(a)."). "The party seeking contempt sanctions has the burden of proving by clear and convincing evidence that the contemnors violated a specific and definite order of the court." *In re Eady*, 2008 WL 8444808 at *4 (9th Cir. B.A.P. 2008). "[T]o justify sanctions, the movant must prove that the creditor (1) knew the discharge injunction was applicable and (2) intended the actions which violated the injunction." *In re Bennett*, 298 F.3d at 1069; *see also In re Valley Health Sys.*, 2015 WL 4512178 at *1 (Bankr. C.D. Cal. 2015) ("The violation must be willful."). Regarding the first prong, "[t]he Ninth Circuit has held that the first prong of the *Hardy* test requires that the bankruptcy court be shown that the target creditor knew that the discharge injunction was applicable to its claim." *In re Nash*, 464 B.R. at 880 (*citing In re ZiLOG, Inc.*, 450 F.3d 996, 1007-09). But, "[i]n applying the second prong of this test, the bankruptcy court's focus is not on the offending party's subjective beliefs or intent, but on whether the party's conduct in fact violated the order at issue." *In re Garcia*, 2014 WL 1345936 at *4 (9th Cir. B.A.P. 2014).

The Ninth Circuit's comments on sanctions for violation of the automatic stay best illustrate the willfulness standard: "Willful violation does not require a specific intention to violate the automatic stay. Rather, the statute provides for damages upon a finding that the defendant knew of the automatic stay and that the defendant's actions which violated the stay were intentional." *In re Pace*, 67 F.3d 187, 191 (9th Cir. 1995). Brown contends that in order to be found in contempt, it must be demonstrated that he *knew he was violating the discharge injunction* – in other words that, contrary to *Garcia*, his subjective belief or intent is relevant. Brown's contention seems to draw support from a single Ninth Circuit case, *In re Zilog, Inc.*, in which the last sentence of the last footnote reads: "To the extent that the deficient notices led the women to believe, even unreasonably, that the discharge injunction did not apply to their claims because they were not affected by the bankruptcy, this would preclude a finding of willfulness." 450 F.3d 996, 1009, n.14 (9th Cir. 2006). *Zilog's* statement clouds the analysis, especially because the above the line text does not contain any indication that willfulness depends upon subjective intent. In fact, the sentence which contains the footnote approvingly cites the *Bennett* standard which requires (1) knowledge of the injunction, and (2) an intentional act which violated the injunction.

Given the quotations provided above, *Zilog's* footnoted comment that "willfulness" can depend upon subjective intent seems to be an aberration, and it seems to have been mostly ignored in subsequent authority within the Ninth Circuit. *See, e.g.*, *Espinosa v. United Student Aid Funds, Inc.*, 553 F.3d 1193, 1205, n.7 (9th Cir. 2008) ("A creditor is not free to violate the discharge injunction because it has doubts

as to the validity of the discharge."); *In re Moon Joo Lee*, 2015 WL 3960897 at *9 (B.A.P. 9th Cir. 2015) (rejecting argument that willfulness required knowledge that discharge injunction applied to claim); *In re Segal*, 2015 WL 400643, 2015 WL 400643 at *6 (B.A.P. 9th Cir. 2015) (willfulness "even if the creditors did not specifically intend to violate the discharge injunction."); *In re Sula, Inc.*, 2016 WL 3960513 at *4 (Bankr. C.D. Cal. 2016) ("The court is not required to find that a party willfully or intentionally failed to comply, nor is 'good faith' a defense."). *But see In re Pedroche*, 2014 WL 5840297 at *5 (B.A.P. 9th Cir. 2014) ("Yen must not only have been aware of the discharge injunction, but must also have been aware that the injunction applied to his claim.").

*In re Chionis* appears to be the only case that recognized *Zilog's* deviation and thoroughly addressed the issue. 2013 WL 6840485 (B.A.P. 9th Cir. 2013). *Chionis* first stated: "'willful' essentially means that the alleged contemnor 'knew of the injunction,'" a proposition for which it cited *Zilog* as support. *Id*. at *4. Yet, in the next paragraph, *Chionis* stated: "The evident concern underlying *Zilog's* first prong is that creditors should not be held in contempt for violation of an order unless they actually are aware that the subject order applied to them." *Id*. at *5. In pressing back against *Zilog's* consideration of subjective intent, *Chionis* first introduced an old Supreme Court case, *McComb v. Jacksonville Paper Co.*, which stated: "It does not lie in [the contemnors'] mouths to say that they have an immunity from civil contempt because the plan or scheme which they adopted was not specifically enjoined. Such a rule would give tremendous impetus to the program of experimentation with disobedience of the law." 336 U.S. 191, 192 (1949).

*Chionis* then said that *Zilog's* statement was in the context of an unusual case – a case where the bankruptcy court itself had sent misleading notices. *Id*. at *7. This factual scenario is similar to the narrow exception that permits a criminal defense based upon mistake of law. *See* UNIFORM MODEL PENAL CODE § 2.04 (3)(b) (mistake of law defense permitted when one "acts in reasonable reliance upon an official statement of the law, afterward determined to be invalid or erroneous, contained in (i) a statute or other enactment; (ii) a judicial decision, opinion or judgment; (iii) an administrative order or grant of permission; or (iv) an official interpretation of the public officer or body charged by law with responsibility for the interpretation, administration or enforcement of the law defining the offense."). *Chionis* then stated:

> We acknowledge that some of the language in *In re Zilog, Inc.* is broad and arguably could be interpreted as precluding a finding of willfulness and hence precluding the imposition of contempt sanctions whenever the alleged contemnor testifies that, for whatever reason, he or she did not subjectively believe that the discharge applied to his or her claim, no matter how misguided or unreasonable that belief might have been. However, we do not believe that *In re Zilog, Inc.* intended such an expansive reading of its comments, given that such a reading seemingly would render the bankruptcy discharge all but toothless.

*Id*. at *8. Given the compelling analysis presented in *Chionis* (which recognized that the factual situation in *Zilog* was analogous to that which would allow a mistake of law defense in most jurisdictions), the fact that the pre-*Zilog* interpretation of willfulness appears to have been retained by the vast majority of judges, and Supreme Court precedent which weighs against considering the subjective intent of the contemnor, the Court concludes that the proper standard is whether Brown: (1) knew of the discharge; and (2) committed an intentional act which violated the discharge. Here, unlike *Zilog*, Brown was not relying on a misleading, official government notice, but, instead, relied upon his own mistaken interpretation of the law. As noted in *Chionis*, to hold that subjective intent is relevant in contempt

proceedings would severely undermine the impact of the discharge, and would render the discharge "all but toothless."

Here, it is clear that the actions at issue were intentional and that Brown knew of the discharge injunction, since he was actively involved in the bankruptcy case at the time. Therefore, the remaining question is whether there was, in fact, a violation of the discharge.

## II. *Violation of Discharge*

11 U.S.C. § 727(b) (2005) states, in part: "Except as provided in section 523 of this title, a discharge under subsection (a) of this section discharges the debtor from all debts that arose before the date of the order for relief under this chapter." A violation of the discharge occurs when: "(1) the creditor took an action to collect, recover or offset a particular debt as a personal liability of the debtor, and (2) such debt is a debt discharged under section 727. A debt is discharged if it arose before the date of the order for relief and has not been excepted from discharge as provided in section 523 of this title." *In re Azevedo*, 506 B.R. 277, 282 (Bankr. E.D. Cal. 2014).

11 U.S.C. § 101 (2010) defines debt as "liability on a claim" and defines claim as:

(A) Right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
(B) Right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

The definition of claim, and, therefore, damages, is thus extremely broad under the Bankruptcy Code. *See e.g.*, *In re Jensen*, 995 F.2d 925, 929 (9th Cir. 1993) ("This broadest possible definition of claim is designed to ensure that all legal, equitable, secured, or unsecured."); *Matter of Rosteck*, 899 F.2d 694, 697 (7th Cir. 1990) ("by bringing even contingent and unliquidated claims into the bankruptcy case, Congress has insured that the debtor will receive the complete discharge of his debts, without the threat of lingering claims riding through the bankruptcy.").

"To facilitate this broad definition and the fresh start policy, the Ninth Circuit ordinarily employs the 'fair contemplation test' in determining when a claim arises." *In re Gillespie*, 516 B.R. 586, 591 (B.A.P. 9th Cir. 2014). "However, the Ninth Circuit has adopted a different standard for determining for discharge purposes when an attorney's fee claim arises," the *Ybarra* rule. *Id.* "Under that standard, even if the underlying claim arose prepetition, the claim for fees incurred postpetition on account of that underlying claim is deemed to have arisen postpetition if the debtor 'returned to the fray' postpetition by voluntarily and affirmatively acting to commence or resume the litigation with the creditor." *Id.* (*citing In re Ybarra*, 424 F.3d 1018, 1027 (9th Cir. 2005). *Ybarra* states that:

> In sum, we have held that post-petition attorney fee awards are not discharged where post-petition, the debtor voluntarily pursued a whole new course of litigation, commenced litigation, or returned to the fray voluntarily. We have also endorsed the notion that by voluntarily continuing to pursue litigation post-petition that had been initiated pre-petition, a debtor may be held personally liable for attorney fees and costs that result from that litigation.

*Id*. at 1024. "Whether attorney fees and costs incurred through the continued prosecution of litigation initiated pre-petition may be discharged depends on whether the debtor has taken affirmative post-petition action to litigate a prepetition claim and has thereby risked the liability of these litigation expenses." *Id.* at 1026.

There is some confusion regarding the scope of the *Ybarra* exception. The *Ybarra* exception is clearly illustrated by its holding: "In light of the foregoing, we conclude that the award of attorney fees and costs *incurred post-petition* was not discharged in Ybarra's bankruptcy." *Ybarra*, 424 F.3d at 1027 (emphasis added). This holding is tailored to ensure that the Debtor cannot obtain a post-petition benefit (the continued prosecution of litigation) while not being saddled with any corresponding duty to pay for that benefit. *See, e.g.*, *In re Gillespie*, 516 B.R. 586, 591 (B.A.P. 9th Cir. 2014) ("The *Ybarra* court further explained that, while Congress intended the discharge to relieve debtors from costs associated with their prepetition acts even if such costs continue to accrue postpetition, it did not intend to insulate debtors from costs associated with postpetition acts."). To the extent that the attorney fees were incurred *pre-petition* (or *pre-conversion*, in this case), those fees are not covered by the *Ybarra* exception. In the context of a contingency fee agreement, the entire fee arises, and is therefore incurred, at the time the contingency occurs. In the context of a claim for attorney's fees which is based on reasonable compensation for services (whether on an hourly rate or on flat fee arrangement), the claim is incurred at the time the services are provided. The fact that some portion of the fee was incurred post-petition does not except the fees that were incurred pre-petition from discharge.
*Matter of Hadden*, a case not binding on this court, but relied upon by *Ybarra*, illustrates this principle. 57 B.R. 187 (Bankr. W.D. Wis. 1986). *Hadden* stated:

> *In re Thomas*, 12 B.R. 432 (Bankr. S.D. Iowa 1981) provides the closest precedent, and suggests the propriety of dividing the claim between the pre-petition and post-petition services. To the extent that the attorney's fees arose before the filing of the bankruptcy petition, Stettler's claim is a dischargeable pre-petition debt. To the extent that the fees arose after the debtor filed for bankruptcy, they constitute a nondischargeable post-petition debt.
> When a claim arises is a question to be determined by state law.

*Id*. at 188. Therefore, the initial question is whether the claim was incurred post-petition or pre-petition.

The Ninth Circuit, however, appears to have subsequently narrowed the scope of *Ybarra*, by reincorporating the "fair contemplation test":

> Because Picerne and Castellino had entered into a contract with an attorneys' fees provision, and Picerne commenced an action under that contract against Castellino in state court before Castellino filed a Chapter 11 bankruptcy petition, Picerne's contingent claim for attorneys' fees arose before both the filing of Castellino's bankruptcy petition and the confirmation of Castellino's plan. Further, the preconfirmation settlement agreement between Picerne and Castellino required the parties to complete the state court litigation. Under these circumstances, Picerne could fairly and reasonably contemplate that it would incur attorneys' fees associated with the state court litigation and would have a claim for attorneys' under the agreement if it prevailed.

*In re Castellino Villas, A.K.F. LLC*, 836 F.3d 1028, 1036 (9th Cir. 2016). *In re Castellino Villas* seems to reject the contention that "voluntarily continuing to pursue litigation post-petition that had been initiated

- 7 -

pre-petition," *Ybarra*, 424 F.3d at 1024, is sufficient to except attorneys' fees incurred post-petition from discharge; instead, the fees would have to be outside the fair contemplation standard. This decision has later been referred to as harmonizing the two tests. *See In re Baroni*, 558 B.R. 916, 925 (Bankr. C.D. Cal. 2016) ("Although neither *Siegel* nor *In re Ybarra* specifically mention the fair contemplation test, the court in *In re Castellino Villas* describes those cases as instances in which the attorneys' fee award was simply not within the 'fair contemplation' of the parties.").

Here, the Debtors unquestionably continued to pursue litigation post-conversion that had been initiated pre-conversion; the verdict was not rendered until more than six months after conversion. Therefore, some of the attorney's fees were incurred post-petition, but, in accordance with the narrowing of the *Ybarra* rule by *Castellino Villas*, followed by *Baroni*, even if the attorney's fees were incurred post-petition, Brown must still show they were outside the fair contemplation of the parties to survive discharge.

### III. *Classification of Claims*

As *Hadden* makes clear, if an attorney fee arising from a contractual arrangement results in fees both pre-petition and post-petition, the fees that arise pre-petition are considered pre-petition claims that are subject to discharge. Therefore, it necessary to review Brown's claims which Debtors rely on to form the basis of their motion. Brown's most expansive state court complaint included eight causes of action: (1) breach of contract (oral contract); (2) breach of contract (contingency agreement); (3) breach of contract (bankruptcy agreement); (4) breach of implied covenants; (5) quantum meruit-unjust enrichment (state court proceeding); (6) quantum meruit-unjust enrichment (bankruptcy matters); (7) unfair business practices under § 17200; and (8) fraud. As shown below, each cause of action asserts either a pre-petition claim, or is a post-petition claim subject to discharge because it was within the fair contemplation of the parties at the time of conversion.

#### A. *First Cause of Action*

Brown alleges in his state court complaint that an oral contract was formed containing the general terms that would eventually form the two representation contracts. Brown simply alleges a general breach of that oral contract; the referenced exhibit, however, makes clear Brown is referring to a breach of that part of the agreement that deals with the state court proceeding. Because compensation as to that proceeding as governed by the "oral contract", according to the allegations made by Brown in his complaint, was based on a percent of money obtained, the fees would naturally arise post-conversion (at the time the state court judgment was rendered). The claim for attorneys' fees, however, would have been in the fair contemplation of the parties at the time of conversion since this oral contract was allegedly formed approximately nine months before conversion, and "a whole new course" of litigation was not begun. Therefore, under the "fair contemplation" standard of *In re Castellino Villas*, this cause of action is subject to discharge.

#### B. *Second Cause of Action*

The second cause of action, for breach of the contingency fee agreement, requires separate analysis because the relevant contractual provisions are more extensive than those that comprise the alleged oral contract.

- 8 -

Section 4 of the contingency fee arrangement, titled "Legal Fees," states, in part:

> Attorney will only be compensated for legal services rendered if a recovery is obtained for Client. If no recovery is obtained, Client will not be obligated to pay any amounts, including fees, costs, disbursements or expenses. . . .
> In the event of Attorney's discharge or withdrawal as provided in Paragraph 11, Client agrees that, upon recovery of a settlement, arbitration award or judgment in Client's favor in this matter, or upon receipt of any other form of recovery for this matter, Attorney shall be entitled to be paid by Client a reasonable fee for the legal services provided.

Section 11, titled "Discharge and Withdrawal" states, in part:

> Notwithstanding Attorney's withdrawal or Client's notice of discharge, and without regard to the reasons for the withdrawal or discharge, Client will remain obligated to pay Attorney for all costs incurred prior to the termination and, in the event that there is any net recovery obtained by Client after conclusion of Attorney's services, Client remains obligated to pay Attorney for the reasonable value of all services rendered from the effective date of this Agreement to the date of discharge.

The second cause of action in Brown's state court complaint appears to alternatively suggest that Debtors owed Brown pursuant to the contingency provision, and that Debtors owed Brown pursuant to the discharge/withdrawal provision of the representation agreement. The former, under the *Ybarra* rule, would have arose post-conversion, according to Brown's account and Section 4, since it would have matured at the time the state court judgment was issued. The latter, under the *Ybarra* rule, would also have arisen post-conversion, according to Brown's account and in accordance with Section 4 of the representation agreement, since the duty to compensation Brown for reasonable services would have matured at the time the state court judgment was issued. Nevertheless, under the *In re Castellino Villas* standard, attempting to collect on the basis of either provision would have been within the "fair contemplation" of the parties at the time of conversion, because the contract was formed pre-conversion and a new course of litigation was not initiated.

C. *Third Cause of Action*

The third cause of action, for breach of the bankruptcy retainer agreement, is more straightforward. As Brown's fee application with the Court made clear, the services provided by Brown which Brown asserts were outside the scope of the flat fee arrangement were provided post-petition and pre-conversion. The relevant contractual provision relied upon by Brown states: "The $5,000.00 fee will be fixed, whether we spend less time, or if we spend more time on your Bankruptcy, unless unusual circumstances arise. . . . [u]nless unusual circumstances arise as described above, you will not be billed for hourly fees." Brown's third cause of action seeks to recover on hourly fees that were due to unusual circumstances. Because these fees were incurred pre-conversion, they were discharged. Therefore, this cause of action is a violation of the discharge injunction.

D. *Fourth Cause of Action*

Brown's fourth cause of action is for breach of the implied covenants of good faith and fair dealing. Brown alleges that this breach occurred because Debtors "breached their obligations of good faith and fair dealing by breaching the contracts, treating the Plaintiff unfairly, and committing fraud against the Plaintiff, all in such a manner as to deprive the Plaintiff from deriving any benefit whatsoever from any one or all three of the contracts that were entered into between the Plaintiff and the Defendants." While Brown's claim does not directly specify whether he believes this breach occurred pre-conversion or post-conversion, it would appear Brown has alleged that the continuing action of Debtors constituted the breach, with parts occurring both pre-conversion (fraud) and post-conversion (breach of contract). Because Brown has failed to differentiate between a pre-conversion claim (which would have been discharged) and a post-conversion claim (which would not have been discharged), the cause of action itself represents a violation of the discharge injunction since it seeks to recover, in part, on a discharged claim.

### E. Fifth Cause of Action

Brown's fifth cause of action is quantum meruit-unjust enrichment (legal services-civil matter). In California, "[t]he elements of quantum meruit are: (1) that the plaintiff performed certain services for the defendant, (2) the reasonable value [of the services can be determined], (3) [the services] were rendered at defendant's request, and (4) [the services] are unpaid." *Moreno v. SFX Ent., Inc.*, 2015 WL 4573226 at *7 (C.D. Cal. 2015) (*quoting Cedars Sinai Med. Ctr. V. Mid-W. Nat'l Life Ins. Co.*, 118 F.Supp.2d 1002 (C.D. Cal. 2000) (*citing Haggerty v. Warner*, 115 Cal. App.2d. 468, 475 (Cal. Ct. App. 1953))). Chronologically, there are two actions: (1) defendant requests that plaintiff provide services, and (2) the performance of those services. The latter step must have two additional characteristics: (1) that the value of the services can be ascertained and that compensation was not received for those services. These characteristics are not events, however, and therefore the final event to occur which triggers liability under a theory of quantum meruit is the performance of the services. Here, services were performed both pre-conversion and post-conversion. Therefore, liability under a quantum meruit theory for the services performed pre-conversion would have arisen pre-conversion, and thus been discharged. Because liability under this cause of action was partially discharged, this cause of action is a violation of the discharge injunction.

### F. Sixth Cause of Action

Brown's sixth cause of action is quantum meruit-unjust enrichment (legal services-bankruptcy matters). Here, the entirety of the bankruptcy services were provided pre-conversion, and, therefore, liability under this claim was entirely discharged. Because liability under this cause of action was discharged, this cause of action is a violation of the discharge injunction.

### G. Seventh Cause of Action

Brown's seventh cause of action is unfair business practices under CAL. BUS. & PROF. CODE § 17200. Again this claim fails to distinguish between pre-conversion and post-conversion violations. "To bring a UCL claim, a plaintiff must show either an (1) unlawful, unfair, or fraudulent business act or practice, or (2) unfair, deceptive, untrue or misleading advertising." *Lippitt v. Raymond James Fin. Servs., Inc.*, 340 F.3d 1033, 1043 (9th Cir. 2003). While some of the allegedly "unlawful, unfair, or fraudulent business act(s)" appear to have been committed post-conversion, there are certainly allegations concerning acts committed pre-conversion, and that would form the basis of a discharged claim. For example:

"Defendant MATT MIGHELL has acted fraudulent because MATT MIGHELL intentionally defrauded the Plaintiff into performing vast amounts of legal work and expending major costs and expenses without ever intending to pay." This refers to conduct that occurred pre-conversion, and represents, therefore, a discharged claim. Because liability under this cause of action was partially discharged, this cause of action is a violation of the discharge injunction.

   H. *Eighth Cause of Action*

Brown's eighth cause of action is fraud. "Under California law, the elements of a claim for fraud are "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damages." *Vaccarino v. Midland Nat. Life Ins. Co.*, 2003 WL 3200500 at *10 (C.D. Cal. 2013) (*quoting Lazar v. Superior Court*, 12 Cal.4th 631, 638 (Cal. 1996). Chronologically, this means that three events must occur: (1) the misrepresentation, (2) the reliance on the misrepresentation, and (3) the incurrence of damages. Brown's account of the incurrence of damages states: "The Plaintiff has been harmed in that he has expended a very significant number of hours on the Defendants' legal matters and has incurred a number of costs related to these matters, but has not been paid or reimbursed at all by any of the Defendants for these items." Therefore, the damages were incurred, and the cause of action fulfilled (according to Brown's complaint), at the time Brown provided services. Because services were pre-conversion and post-conversion, the claim was partially discharged. Because liability under this cause of action was partially discharged, this cause of action is a violation of the discharge injunction.

   I. *Second Amended Complaint, First Cause of Action*

Brown's first cause of action in the amended complaint is quantum meruit – reasonable value of work, labor, and services (civil matter). Here, services were performed both pre-conversion and post-conversion. Therefore, liability under a quantum meruit theory for the services performed pre-conversion would have arisen pre-conversion, and, therefore, been discharged. Because liability under this cause of action was partially discharged, this cause of action is a violation of the discharge injunction.

   J. *Second Amended Complaint, Second Cause of Action*

Brown's second cause of action in the amended complaint is quantum meruit – reasonable value of work, labor, and services (bankruptcy matter). Here, the entirety of the bankruptcy services were provided pre-conversion, and, therefore, liability under this claim was entirely discharged. Because liability under this cause of action was discharged, this cause of action is a violation of the discharge injunction.

## **IV. CONCLUSION**

For the reasons discussed above, the Court holds Brown in civil contempt for violation of the discharge injunction. Specifically, the Court finds Brown's first amended and second amended complaints violated the discharge injunction.

Movant is required to submit evidence demonstrating actual damages and costs. The Court will hold a hearing on the issue of damages on March 22, 2017. Debtors' evidence and opening brief is due

February 22, 2017. Brown's responsive brief, if any, is due March 1, 2017. Debtors' reply brief, if any, is due March 8, 2017.

IT IS SO ORDERED.

###

Date: February 7, 2017

Mark Houle
United States Bankruptcy Judge